## Commercial Bank *vs.* Benedict, &c.

Case 41.

### APPEAL FROM JEFFERSON COUNTY COURT.

ORD. PET.

1. Severing a bank note, as a measure of safety in transmitting by mail, with no design of defrauding the bank, does not discharge the bank from the debt of which the note is regarded as but the evidence; so if one part or the entire note is lost or destroyed. In either case proof that the entire note once existed, that the same or one part thereof is lost or destroyed, and the *bona fide* ownership thereof, entitles the holder to recover. (*Martin vs. Bank U. S.* 4 *Wash. Cir. Rep.* 253–5.)

2. In general, where a bank note, mutilated by design, for purposes of transmission, is presented for payment, or payment is demanded for a bank note lost or destroyed, the bank is entitled to a bond of indemnity before a right of action for non payment accrues. Not so where the bank denies liability; in such case a bond tendered before judgment was held sufficient.

3. *Section* 6, *Civil Code*, giving the remedy by ordinary proceedings in actions founded on written obligations lost or destroyed, applies to bank notes cut, lost, or destroyed.

4. Appeal lies to this court, from the judgments of the Jefferson county court, where the matter in controversy is over twenty dollars. (*Act* 25 *February,* 1854.)

*Pirtle & Ballard* for appellants—

Argued: That the bank brings this case to this court for the purpose of having the question it presents settled.

The bank objects to the right of parties to cut her notes as they may choose, thus changing the shape of contracts at will, and sue her on pieces, leaving her to be sued and harrassed by holders of other pieces. This is a change of her obligations without consent, made, not accidentally, but at the option or choice of the parties holding her paper.

The bank objects because no action at law will lie in such cases. *Story on Bills of Exchange, sec.* 448, says: "Where a bill payable to bearer, (as is com-'monly the case with bank notes,) is divided and 'transmitted by the post, and one-half is lost, and the 'other arrives safe, the holder is not entitled to re-'cover at law upon the half which he possesses, for 'the other half may have passed, or be *proved* to 'have passed, into the hands of another *bona fide* 'holder."

*Chitty, page* 286, says the action will not lie without the production of both pieces.

In *Mayer vs. Johnson,* 3 *Camb.* 324, it was decided that the entire note must be produced. The offer to indemnify will not give jurisdiction to a court of law. (*Story on Bills of Exchange, sec.* 440, *note.*)

There have been different decisions on this matter, but not in England we think. It looks hard that the maker of a note should, at the mere will of another, be put to the difficulty of defending himself against one who should claim to be a *bona fide* holder of a piece of that note, whether the trouble be in a court of law or of equity.

It is further objected, that there is no affidavit made before the court by the parties themselves; for aught that is shown to the court although their clerk did not receive the other piece, one of them may have it.

If the note were destroyed the remedy would be at law by the Code; but the Code does not apply to such case as this.

The justice had no equitable jurisdiction, as the sum was over five pounds; and the Code did not ap-

ply to the case on appeal to the county court, but only
applied to cases where pleading in writing was con-
templated.

COMMERCIAL BK
*vs.*
BENEDICT, &c.

Judge DUVALL delivered the opinion of the court.

Oct. 3, 1857.

Bennedict and Kennedy, as survivors of the late
firm of Emóry Low, & Co., recovered a judgment
against the Commercial Bank of Kentucky, before a
justice of the peace of Jefferson county, for forty
dollars and costs.   Upon an appeal from that judg-
ment to the county court of Jefferson county there
was a verdict and judgment in favor of the appel-
lees, for forty dollars; and to reverse that judg-
ment the bank has prosecuted this appeal.

The facts established by the testimony, (in regard
to which there seems to be no controversy,) are sub-
stantially these:   On or about the 12th of October,
1854, Kenyon, an attorney at law at Jacinto, in the
State of Mississippi, collected for the appellees, forty
dollars and remitted to them at Louisville, by mail,
the left hand halves of two notes, of the denomina-
tion of twenty dollars each, on the Commercial Bank
of Kentucky, at Paducah, retaining the two remain-
ing halves to be remitted afterwards.   Receiving no
acknowledgment from Benedict & Co., of the receipt
of the letter and its enclosure, Kenyon wrote again
to enquire into the matter, and was soon afterwards
informed by his correspondent that the halves of the
two bank notes had not been received.   He there-
upon advised the bank, by letter, of their loss.   The
president of the bank replied, offering to redeem the
two halves still in possession of Kenyon, by paying
ten dollars for each half, but declining to redeem or
pay any thing for those which had been lost.   Kenyon
afterwards remitted the other two halves of the notes
to the appellees, by whom they were in due time re-
ceived, and they instituted this suit to recover the
amount of the two bank notes thus in part destroyed
or lost.

COMMERCIAL BK
vs.
BENEDICT, &c.

The bank resists the right of the appellees to a recovery, and seeks to reverse the judgment in their favor upon two grounds:

1. That the written evidence of its obligation has been changed, not by casualty, but voluntarily, by the appellees or their agent, and that they have no right to recover upon the notes so altered.

2. That a court of law has no jurisdiction in such cases.

We are not aware that any question similar to the one now before us has ever been decided by this court. In the courts of the other states, and of England, however, the liability of banks, upon notes or bills which have been lost, or which have been impaired by design, where such design is not to injure the maker or to cancel the debt, has been established in cases almost without number. In the case of *Martin vs. the Bank of the U. S.* 4 *Wash. Cir. R.* 253–255, the nature and extent of the liability in such cases is very lucidly stated by Mr. Justice Washington. He lays down the principle that a bank note is the evidence of a debt due by the maker to the holder of it, and nothing more. "It is also the highest species of evi- ' dence of such debt, and in fact the only proper evi- ' dence, if it be in the power of the owner of the ' note to produce it. But if it be lost or destroyed ' the owner does not thereby lose his debt, but the ' same continues to exist in all its rigor, unaffected ' by the accident which has deprived the owner of ' the means of proving it, by the note itself." The debt still existing, the law which always requires the best evidence permits the party, where such better evidence is lost or destroyed, or not in his power, to prove the genuineness and contents of the lost paper, and if this be satisfactorily made out he is entitled to recover. Cutting a bank note into two parts does not discharge the bank from the debt, of which the note was but the evidence. If one of the parts should be lost or destroyed the debt would be no more affected than if the entire parts had been lost or destroyed.

1. Severing a bank note, as a measure of safety in transmitting by mail, with no design of defrauding the bank, does not discharge the bank from the debt of which the note is regarded as but the evidence; so if one part or the entire note is lost or destroyed. In either case proof that the entire note once existed, that the same or one part thereof is lost or destroyed, and the *bona fide* ownership there of, entitles the holder to recover. (*Martin vs. Bank U. S.* 4 *Wash. Cir. Rep.* 253-5.)

The evidence is impaired, indeed, not by the act of cutting the note, but by the same accident which would have affected the entire note had that been lost. In both cases the owner must resort to secondary evidence, and is bound to prove that the note did once exist, that it is lost or destroyed, and that he is the true *bona fide* owner of the debt. "If one part ' only of the note be lost, the difficulty which the real ' owner of it has to encounter, in proving his right to ' the debt, is diminished."

We deem it unnecessary to multiply authorities upon this point. The principle to be applied to the facts of the case before us is, that the parts of the notes held by the appellees are not to be regarded as the foundation of the action, but merely as evidence of their debt, founded upon the written promise or obligation of the bank, which promise or obligation had existed in the form of a bank note, and which has been impaired, not with the design of injuring or defrauding the bank, but as a measure of safety and protection to the owners, adopted by their attorney, and dictated by prudence. Having established the existence of the debt, and proved satisfactorily that they are the *bona fide* owners of it, their right to recover is unquestionable.

In general the bank might be entitled to a bond of indemnity before a right of action upon a lost note would accrue to the owner, but in this case the bank having denied its liability, the preliminary tender of such bond was dispensed with. The bond copied into the record, and appearing to have been executed before judgment, must be deemed sufficient under the circumstances.

2. There are several conclusive answers to the objection that the court had not jurisdiction. No objection, on this ground, appears to have been taken in the court below. But the *Civil Code*, sec. 6, expressly gives the remedy by ordinary proceedings in actions founded on written obligations, which have been lost or destroyed.

2. In general, where a bank note, mutilated by design, for purposes of transmission, is presented for payment, or payment is demanded for a bank note lost or destroyed, the b'k is entitled to a bond of indemnity before a right of action for non-payment accrues. Not so where the bank denies liability; in such case a bond tendered before judgment was held sufficient.

HARLAN'S H's
vs.
SEATON'S H's.

3. *Sec.* 6, *Civil Code*, giving the remedy by ordinary proceedings in actions founded on written obligations lost or destroyed, applies to bank notes cut, lost, or destroyed

*It may be proper to remark, in this connection, that under a special act of the legislature, approved February 25, 1854, entitled, "an act to establish a levy and county court for Jefferson county," an appeal lies from the judgments of that court to this, where the matter in controversy is over twenty dollars.

We are satisfied that the record exhibits no error prejudicial to the substantial rights of the appellee, and the judgment is therefore affirmed.

---

*4. Appeal lies to this court, from the judgments of the Jefferson county court, where the matter in controversy is over twenty dollars. (*Act* 25 *February*, 1854.)